## TRAVELERS' FIRE INS. CO. v. CAWLFIELD.

### No. 9914.

Court of Civil Appeals of Texas. Galveston.
May 2, 1934.

Rehearing Denied May 24, 1934.

Dissenting Opinion May 31, 1934.

W. P. Neblett, of Houston, for appellant.

J. P. Markham, Jr., of Houston, for appellee.

GRAVES, Justice.

This brief and very general statement of the nature and result of the suit, with only one undisputed detail interpolated, is taken from appellant's brief:

"The appellee, Cawlfield, sued the appellant for the sum of Six Thousand Seven Hundred ($6,700.00) Dollars alleging a complete loss by fire of the improvements covered by the policy of the appellant. The appellant answered admitting that it had issued its policy in the sum of Six Thousand Seven Hundred ($6,700.00) Dollars covering the said improvements, but that the loss was not a total loss and furthermore, that it had purchased for $6,000.00 cash by assignment a Six Thousand ($6,000.00) Dollar note which the appellee's predecessor in title had executed and which was secured by a vendor's lien and deed of trust on the insured property, and that in as much as the appellee had not paid the note, interest, and attorney's fees, it set up the note as an offset against the claim of the appellee. The note, principal, interest and attorney's fees, exclusive of the sale's-price of $1,200.00 it brought under the foreclosure of the deed of trust just referred to, was alleged to amount to more than the face of the policy, and the appellant further pleaded that it was entitled to be subrogated to the rights of Robert Griffin from whom it purchased the $6,000.00 note against the property, after he had sold the

same out for $1,200.00 in such foreclosure sale against Cawlfield. Defendant requested an instructed verdict. Over the objection of the appellant, the Court submitted to the jury the single question of whether there was a total loss, to which question the jury answered in the affirmative. The amount of the policy was $6,700.00 and the amount of the note, principal, interest, and attorney's fees, at the time it was assigned by Robert Griffin to the appellant was $7,084.00.

"Upon the answer of the jury, the trial court entered judgment against the appellant and in favor of the appellee for the sum of Seven Hundred ($700.00) Dollars, together with 6% per annum interest thereon from January 1, 1931."

■ In this court appellant repeats its contention below to the effect that the total amount due on the note it so acquired against appellee amounted, both at the date of its purchase thereof and at the time of this judgment, to more than the $6,700 called for in the insurance policy, and that it was therefore entitled, notwithstanding the jury's finding that the property had been totally destroyed, to a judgment in its favor.

This contention cannot be sustained, for the reason that it ignores the undisputed fact that, before Robert Griffin sold the note to appellant, he had foreclosed the deed of trust securing it and sold the lot on which the burned house had stood out against appellee, Cawlfield, for $1,200, which sum Cawlfield had become entitled to have credited on the aggregate then due on the note; the evidence shows the date of the assignment to have been February 1, 1931, at which time there was due on the note $6,000 for principal, $440 for interest, and $644 for attorney's fees, aggregating $7,084; deducting therefrom the $1,200 the lot had sold for under the prior foreclosure thereon by Griffin, there is left a balance of $5,884 due on the note in the hands of the insurance company on that date. The note carried an interest rate of 8 per cent. per annum; hence it was entitled to add thereto $470.72 for practically one year's interest at that rate from February 1, 1931, to January 28, 1932, the date of the judgment, making a total in its favor on the latter date of $6,354.72.

Under the jury's verdict, however, there had been due Cawlfield since February 1st of 1931 the $700 balance due under the insurance policy, over and above the $6,000 appellant had so paid to Griffin on that date for the note against him. This verdict of the jury that the house had been totally destroyed is not attacked, nor could it have been successfully so, since there is ample evidence to sustain it. In consequence, Cawlfield, on his side, was entitled to the $700 balance due under the insurance policy, together with the 6 per cent. interest allowed by law thereon from the date of the assignment of his note to appellant on February 1st of 1931 to the date of the judgment herein on January 28th of 1932, or the additional sum of $42, which, added to the $700 balance of insurance, leaves a total due him at the latter date of $742; in other words, the separate accounts are to be considered as carrying $6,354.72 in favor of the insurance company as against $6,742 in favor of Cawlfield, the striking of a balance between which amounts leaves still due the latter on the date of this judgment the sum of $387.28, rather than the amount of the judgment rendered.

It follows that the judgment in appellee's favor should be so reformed as to be reduced to the sum of $387.28 and affirmed for that amount.

The considerations upon which this court reaches these conclusions are, in substance, as follows:

(1) The parties had bound themselves by these provisions in their contract (the fire insurance policy on the house):

"Loss Payable Clause.

"It is agreed that any loss or damage ascertained and proven to be due to the assured under this policy shall be held payable to ——— as interest may appear, subject, however, to all the terms and conditions of this policy, which are made a part hereof.

"Mortgage Clause with Full Contribution.

" * * * Loss or damage, if any, on building-items under this policy, shall be payable to Robert Griffin, first; and West Bond & Mortgage Company, second as ——— Mortgagee * * *, as such interest may appear. * * *

"On payment to such mortgagee * * * of any sum for loss or damage hereunder, if this Company shall claim that as to the mortgagor or owner, no liability existed, it shall, to the extent of such payment be subrogated to the mortgagee's * * * right of recovery and claim upon the collateral to the mortgage-debt, but without impairing the mortgagee's * * * right to sue, or it may pay the mortgage-debt and require an assignment thereof and of the mortgage."

The contract thus expressly gave the insur-

ance company two distinctive privileges in the event it duly made bona fide claim after the fire that any liability did not exist as to the owner, Cawlfield, which the undisputed evidence herein showed that it did do, first, to become subrogated to the mortgagee's rights to the extent of any payment it may have already made to him for any loss or damage under the policy; or, second, to itself pay his mortgage debt in full and require an assignment thereof and of the mortgage from the mortgagee for its protection; the proof likewise shows that the alternative one of so paying the mortgage debt in full and taking the assignment thereof from Griffin, the mortgagee, was the one appellant availed itself of, wherefore its rights now are determinable upon the choice it then made. That such contracts have been quite generally upheld, and are to be enforced in accordance with their express terms is held by the Supreme Court, through the Commission of Appeals, under full citation of supporting authorities, in Boatner v. Home Insurance Co., 239 S. W. 928.

(2) It further undisputedly appears that the insurance company had so exercised its privilege of taking over the debt of the appellee to Griffin under these circumstances: After first making its claim that the house had not been totally destroyed to the extent that at least $700 in value of improvements still remained, it demanded that he pay Griffin the mortgage debt and accept from it $6,000 in full payment under the policy for the actual loss he had sustained in the fire; both these things he refused to do, and made no tender of payment of the debt in whole or in part, claiming the house to have been entirely destroyed and himself in consequence entitled to the full $6,700 face value of the policy; this despite the fact that in the meantime Griffin had already so foreclosed on his liens against the property and had bought it in himself for a credit of $1,200 for the value of the land thus sold from Cawlfield himself. In the meantime, further, Cawlfield had sued Griffin in a separate suit, seeking to have such foreclosure sale set aside as well as damages to himself because of it, which suit had then been finally adjudicated against him.

(3) The appellee subsequently in this suit declared against the appellant for the full amount of the $6,700 face value of the policy, with legal interest thereon only, making no claim for statutory penalties or attorney's fees; in offset, as the general statement has shown, the appellant countered with the as-

signed note it still held against him, together with accumulated interest and attorney's fees, which are undisputedly shown to have accrued, if it was entitled to so set up the same against him.

(4) In transferring the policy back to the insurance company on February 1st of 1931, along with the assignment of his note for a like amount against Cawlfield, the then mortgagee, Robert Griffin, indorsed this receipt thereon: "$6,000.00. Received from The Travelers Fire Insurance Company of Hartford Conn. Six thousand dollars ($6,000.00) the same being a compromise settlement in full satisfaction for all claims against said Insurance Company under Policy Number 15225 for loss or damage occasioned by the Fire which occurred on the 1st day of August, 1930, and said policy is hereby surrendered."

Notwithstanding the fact that at that time Griffin had become the holder of the title to the property by reason of the foreclosure and had first call on the insurance thereon under appellant's policy, this court concludes that he did not have the right to settle for the insured, Cawlfield, all his claim for insurance thereunder, but that that question was still one depending upon whether or not there had been a total loss of the improvements in the fire, and that issue having been settled favorably to him in the jury's verdict he later secured in his suit herein, he was entitled to the benefit thereof, the mortgagee being without authority to, in effect, so cancel the insurance policy. Farrington v. Commercial Standard Ins. Co., 71 S.W.(2d) 336, decided by this court March 27, 1934, and authorities therein cited.

The judgment has therefore been reduced to the principal sum of $387.28, and, as so reformed, has been affirmed, with Chief Justice PLEASANTS dissenting.

Reformed and affirmed.

PLEASANTS, Chief Justice (dissenting).

When the decision of this appeal was reached and announced, I entered my dissent from the conclusion of the majority of the court that the judgment of the trial court should be reformed and affirmed in accordance with the views expressed in the opinion of Justice GRAVES filed on May 2, 1934.

It seems clear to me that the findings of fact set out in that opinion require an affirmance of the judgment rendered by the trial court; appellee not having complained of the amount of the judgment.

The fact findings by this court, which are shown by the undisputed evidence, are:

"That before Robert Griffin sold the note to appellant he had foreclosed the deed of trust securing it and sold the lot on which the burned house had stood out against appellee Cawlfield for $1,200.00, which sum Cawlfield had become entitled to have credited on the aggregate then due on the note; the evidence shows the date of the assignment to have been February 1, 1931, at which time there was due on the note $6,000.00 for principal, $440.00 for interest, and $644.00 for attorney's fees, aggregating $7,084.00; deducting therefrom the $1,200.00 the lot had sold for under the prior foreclosure thereon by Griffin, there is left a balance of $5,884.00 due on the note in the hands of the Insurance Company on that date. The note carried an interest rate of 8% per annum, hence it was entitled to add thereto $470.72 for practically one year's interest at that rate from February 1, 1931, to January 28, 1932, the date of the judgment, making a total in its favor on the latter date of $6,354.72.

"Under the jury's verdict, however, there had been due Cawlfield since February 1st of 1931 the $700.00 balance due under the insurance policy over and above the $6,000.00 appellant had so paid to Griffin on that date for the note against him; this verdict of the jury that the house had been totally destroyed is not attacked, nor could it have been successfully so, since there is ample evidence to sustain it; in consequence Cawlfield, on his side, was entitled to the $700.00 balance due under the insurance policy, together with the 6% interest allowed by law thereon from the date of the assignment of his note to appellant on February 1st of 1931 to the date of the judgment herein on January 28th of 1932, or the additional sum of $42.00, which added to the $700.00 balance of insurance leaves a total due him at the latter date of $742.00; in other words, the separate accounts are to be considered as carrying $6,354.72 in favor of the Insurance Company as against $6,742.00 in favor of Cawlfield, the striking of a balance between which amounts leaves still due the latter on the date of this judgment the sum of $387.28, rather than the amount of the judgment rendered.

"It follows that the judgment in appellee's favor should be so reformed as to be reduced to the sum of $387.28 and affirmed for that amount."

The mathematical calculations contained in the opinion are, I am sure, accurate, but the application of the law fixing the rights of the parties under their contract to the facts stated in the opinion seems to me to be clearly erroneous.

The opinion correctly states that the $700 which appellant claimed appellee was not entitled to recover under the insurance policy because the whole of the insured property was not destroyed by the fire was, as found by the jury, due appellee by appellant on its policy on February 1, 1931, from which date interest at 6 per cent. was properly allowed appellee. Of course the $6,000 which appellant paid Griffin on February 1, 1931, was then admittedly due appellee on his policy. Appellant had the right to pay out of this money the amount required to satisfy the Griffin note, which was secured by a lien on the proceeds of the policy of which appellant had due notice. But just how, in law or reason, appellant could be permitted to use money due by it to appellee to pay or purchase the note due by appellee to Griffin and charge appellee interest on the money so used is incomprehensible to me. By paying the money to Griffin, appellant relieved itself from any liability to appellee for interest on the amount so paid. It had the unquestionable right to so use the money, and also the right, for its full protection, to have the note assigned to it, but it could not thereafter charge appellee with interest on the note which was in effect charging interest on the money of appellee used in the purchase of the note.

By the express terms of the policy set out in the opinion of the majority of the court, appellant's right of subrogation to Griffin's right to charge interest on his note is limited to the amount of insurance upon which it claimed no liability existed on its part. No other reasonable construction can be given to the language of the policy. To construe the policy as supporting the right of appellant to withhold from appellee money admittedly due him, and to use the money in purchasing other obligations of appellee secured by the policy and drawing a larger rate of interest than appellant's obligation to appellee, is to wholly disregard the fundamental primary purpose and obligations of the parties to the insurance contract, which were the protection of appellee from loss by fire of the property insured, upon the payment by him of the premiums stipulated in the contract. To inject into the contract a license to appellant to withhold money due appellee under the contract, which it admits was justly due him, and use it for the purchase of outstanding obligations of appellee, and by such use of the money not only relieve itself of pay-

ing interest on the money so withheld, but obtain a larger rate of interest upon the note so paid or purchased by appellant, is, in my opinion, unreasonable and unwarranted. It seems to me that this statement of the result of the holding of the majority conclusively shows the unsoundness of their opinion.

No motion for rehearing has been filed by the appellee, who is apparently satisfied with the judgment rendered by this court, but I feel impelled, nevertheless, to record my dissent from the legal conclusion expressed in the majority opinion.